Thank you, Your Honor. May it please the Court, I am Rebecca Kurz on behalf of Mr. Arthur Waters this morning. This case concerns the validity of a protective sweep of my client's home after law arrest pursuant to a warrant. During the sweep, officers moved a couch away from a wall to look behind it to see if anyone was hiding, and in doing so they found a gun and my client was charged and pled guilty to being a felon in possession of a firearm. Excuse me, one thing that concerned me about this case is the lack of record on how long the sweep took and was it just on the ground floor? I assumed it was. I'm a little confused, frankly. Yes, and I reread the transcript and those questions are not answered for you in that transcript. No one who testified ever gave an indication of how long the sweep took, so I have no idea on that issue. The officer, Detective Miller, I believe it was, he took the responsibility of moving into the living room and looking at the stairwell. So he said, I was focused on the stairwell. He didn't say I went up the stairwell to do the bedrooms and the bathroom up there. So, unfortunately, the record is very unclear on that. We have no evidence to let us know whether the scope requirements of Maryland v. Bowie were complied with. Well, but the only excuse about the counter trial is that nothing was discovered upstairs. And the reason I asked about the timing of this and how much time elapsed was there's a point made about the structure of the couch and how far it was off the tile and so on and so forth. If you're making a quick protective sweep, which is supposed to be a quick walkthrough, is it reasonable for these officers to study that and study how far the couch is off the tile in order to decide whether or not an individual could be under there or behind it or inside the couch? I don't think it is reasonable, as the district court said, that police officers have to start engaging in all of these calculations because they're concerned about their safety. That's the primary purpose. But in this case, the magistrate judge found that the sofa was very close to the wall. The client's girlfriend had testified one to two inches. It's just, I think, common sense says it is highly unlikely that someone is behind that sofa. Now, what the officer did was, who had the responsibility for that area, he walked up to the sofa, said he gave it a little hip check. The sofa moved. I think that indicates that it's highly unlikely that there's an adult person weighing, I don't know, 140, 150 pounds. I don't think the sofa would have moved if there's someone actually inside that couch. We also had photographs. Bottom of the couch from the floor, roughly two inches or so. Half the width of a dollar bill is how they measured it. So it's just not reasonable to really think, I think there's someone under this couch, behind this couch, or inside the couch. And the officer said, I had to pull the couch away from the wall because I wanted to see if someone was behind it. If it's so close that you can't just take a quick look and tell, there's nobody there. There's no articulation of any reasonable facts or inferences as to why someone would be in that couch. It's a hunch. One of the... I think you need, well, first of all, touchstone to all Fourth Amendment analysis is, is it reasonable? And it's just not reasonable to believe someone is behind this couch. There are two prongs to Bowie, like you said. There's instances where you don't need reasonable suspicion to do the quick visual sweep in if it is incident to the arrest and if it is in the immediate area. Second... If you make that assumption... Right. And the magistrate judge actually applied that standard. He applied the second prong of Bowie, saying that there have to be articulable facts and reasonable inferences, warranting a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene. So he, the magistrate judge, used that second prong, requiring reasonable suspicion. So there's two problems, I think. One we've already discussed. Is it reasonable that the person is behind, underneath the couch? But two, it's not simply... Bowie doesn't simply apply to any person other than the defendant being in the house. The person has to be dangerous. And the magistrate judge relied on two facts to reach that prong of the standard. When the officers came up to the house, they had various officers around it. One saw some movement at an upstairs window. One saw movement at a lower window. It could be inferred from that evidence that a second person was inside the home, someone other than Mr. Waters. The second fact, or the second rationale that the court relied on, is the one that I have the problem with. He said that in any case basically involving drug trafficking, it will be reasonable to do a protective sweep. And he's relying on a case called United States v. Cash. And quoting from Cash, he said, an officer arresting a suspected drug trafficker in one room of a multi-room residence is justified in conducting a sweep out of concern that there could be individuals lurking in other rooms who may resort to violence to thwart the arrest. Cash, I think, is quite readily distinguishable on its facts. In that case, the defendant was a woman. Officers were, I believe, serving a no contact order on her. They knew from an informant who had been in the home that she had a large brick of what was assumed to be marijuana and a large brick of a white powder, probably cocaine. The person who saw this in her possession confronted her on why he had these drugs. And she kind of shrugged it off saying, well, I have to make a living. So we have large quantities of drugs. We also have a defendant essentially admitting that she's a dealer. In this case, our information comes from a vehicle stop that was done during the course of the surveillance on Mr. Waters' home. The officers stopped a gentleman in his vehicle and asked him a few questions. He agreed to make a phone call to Mr. Waters to verify that they had the right house, that he was inside, and he was going to be there for a while. During this phone conversation, Mr. Waters said something like, I'll be here for a while. I have what you need, or you can get what you want, something like that. What we don't have in the record is any other information that could have been acquired from this gentleman. He had said he bought drugs in the past from Mr. Waters. He never said what kind of drugs or in what quantities. We don't know if his routine was to purchase a user amount of marijuana or if he was going to pick up kilos of cocaine that he was going to then distribute for Mr. Waters. We don't know that Mr. Waters is running a large-scale drug trafficking operation, and that was the critical fact in cash. That is what is missing here and what makes cash inapplicable. So you don't think that small, smaller-level dealers present the same risk? No, I do not. And just because in cash the court was quite specific to refer to large-scale trafficking, they were also noted that it was important that the officer had testified, in my years of experience, I have known large-quantity traffickers to present a danger. They often have guns, and violence goes along with that. Don't small-level dealers also? Not to the point where we can overgeneralize, in my opinion, and say that in every drug trafficking case, we're going to let you do an automatic buoy sweep. How is this relevant? Do you mean this is more relevant if we say that the person on the couch was not immediately arrested? If the couch, if it's unreasonable to get behind the couch, we're done. Mr. Waters wins. If you come to the conclusion, well, maybe there was a person behind or underneath the couch, then you have to assess, but was it a dangerous person? The mere fact that others are in the home doesn't satisfy buoy. The requirement is that there are other persons possibly lurking that pose a threat. You're saying that they couldn't even open the door of the closet in the room where he was arrested? No, in the room where he was arrested, in the kitchen, they can look in. Well, if the couch room is considered immediately adjacent, then the same rule would apply there, too, right? You're only talking about if we say that the couch room is too far away to make any additional suspicions. No, you only reach spaces in which a person could be hiding. I know that. And it has to be reasonable. That's your couch room. Right. We don't do that. Is the person who you're saying could possibly be in this couch, are they dangerous? You're saying that has to be established before they can do a buoy sweep? Yes. Somebody could open the closet regardless. Well, there's two prongs. If it's incident to the arrest, immediately adjacent areas. Isn't anybody who's hiding potentially dangerous? No, I don't read buoy that way. So you read buoy to say they have to have reason to believe that somebody who's dangerous is hiding immediately? Mm-hmm. And they would almost have to know who that person was in order to make that assessment? I don't think the cases go quite that far, because what you see in a lot of these cases where they're assessing dangerousness is a recent case would be Alator out of the Eighth Circuit. They knew that individual to have concealed weapons on him frequently. They knew his prior criminal background. And I do believe that if you get to the point where you have some indication there is very likely to be guns in this home, and you combine that with the fact or reasonable belief that there's another person in the home, I think you're going to meet buoy. We have no evidence that anybody is in this home that has a weapon. They never asked the man who they did the car stop on, does Mr. Waters typically carry weapons? Have you ever seen him with a weapon? Have you ever seen anyone in the home with a weapon? Does he associate with a large group of people or any size group of people who assist him in some type of drug operation? We just don't have the facts. There were two that I cited in my brief, FDUL, F-A-D-U-L, and I believe the second one was NG, E-N-G. Did the question of inevitable discovery or independent source come up in the district court? Because as I understand the record, there was marijuana in plain view. And the district court said at that point there was probable cause to search the house if anyone got a warrant. And they did do a warrant later. I gather the application mentioned both the marijuana and the guns on the couch. It did. But wouldn't it be a situation where the warrant would have been obtained anyway with the marijuana evidence and therefore even if they had been missing the couch originally they could go there on the warrant? Here's my concern with that. Inevitable discovery was raised in the government's response to our motion to suppress. It was argued briefly at the hearing. But there was no evidence as to inevitable discovery. There was never a question of, well, if, officer, if you hadn't found the gun, would you really have gotten a search warrant for a misdemeanor amount of marijuana that you saw? Secondly, it wasn't raised on appeal in the government's brief. I think that is a waiver, although it was briefly mentioned in the district court. It was not in the government's brief to my recollection. I'd like to save 30 seconds if I can for rebuttal. All right. Thank you. May it please the court? My name is Bruce Clark. I represent the United States in this case. And as the court noted, Bowie has two prongs. One is a search of the immediate area without any kind of suspicion. And the second prong is a more extensive search based on reasonable suspicion that an individual posing a danger may be present. When you take a look, when you read the testimony in this case, what happens is the officers confirm to another person that the defendant is there and that he has drugs, he's selling drugs. They follow the girlfriend back out. They stop her. She actually calls him so that they don't bust down the door. And the officers who are making the rear entry, they knock, they announce, they ask for him to come out. He doesn't come out. Eventually, they breach the door. And when they walk in, they walk basically into the rear door, walks into a utility room, and the kitchen is immediately to the right. They walk into the kitchen, and the first time they see Mr. Waters is he's in the living room. He's not, he had said, I'm coming down. But they didn't see him come down the stairs. The first time they see him, he's in the living room. Now, importantly for that is that before the breach, they were told that there were blinds moving on the second floor, and then there were also blinds moving on the first floor as well. So whether the defendant was upstairs or downstairs, the first time they see him, he's downstairs. Yeah. If you take a look at the exhibits, especially Government's Exhibit 5 may be the best. It's not a great picture, but it's a picture of the couch and the entrance to the kitchen. This is a very small house. They see the defendant there. They make him walk across the living room, and they take him into custody in the kitchen. But if you take a look at Exhibit 5, between, say, the arm of the couch and the kitchen is about that much space. So the United States would suggest that's immediately adjacent. That's a place where someone could launch an attack. Now— The couch? The evidence was that the couch was flush against the wall. The evidence was also that they have found individuals hiding in various places, and they need to check out any place where a defendant or an individual could be hiding. Not—they don't need to figure out how he got back there. I mean, if— Okay. So if somebody— Well— Well, yes, yes. It has to be big enough to hide somebody, right? But if somebody—what happened was he hip-checked the couch to see how heavy it was, to see if somebody would be in the couch. And then he moved the couch out, and he looked at the back. The back of a couch is not an impenetrable wall. If there's no fabric back there, if there's nothing back there, somebody could have got behind the couch, pulled it in. It's flush against the wall, and he's there. And so he looked to see if anybody could have done that. And that was all of the—I mean, there's no further sweep of that. He just checked the weight and looked the back to see if anybody could be hiding there. Now, the fact that it was flush against the wall does not preclude somebody hiding there, especially, as I noted, if there's no back to the couch. So that—and when you take a look at it, that's immediately adjacent. And the evidence was that this was clearly large enough to hide an individual. I mean, you take a look at the pictures. It's a standard couch. It's easily large enough to hide an individual. And the evidence was that they were taught to check areas where an individual could be hiding for their own safety. So that was the basis. The United States believes that alone is a sufficient basis to justify the protective sweep. The magistrate court also found that there was reason to believe that a person who posed a danger could be present based on the fact that there had been the call regarding the drugs. And the magistrate did cite the cash case on that. The officers had announced their presence. The defendant had come to the door. For the defendant to come to the door, he didn't do that. They saw the blinds move on the first floor or on the second floor and then 30 seconds later on the first floor. And the defendant said he was coming down when they entered the kitchen and I guess told him to come down. He said, I'm coming down. So the magistrate decided on the second prong of Bowie. And I would suggest that the evidence would support the second prong of Bowie as well, that this was a situation where somebody was dealing drugs. They had an idea that there may be more than one person there. There was sufficient time for somebody to hide because they didn't make a non-announced entry. So I believe that the evidence would support what the magistrate found in this case. I think the first prong of Bowie applies. No, I don't believe so, Your Honor. What Bowie says is an individual who could pose a danger, and what Mr. Waters is arguing is what that means is a dangerous person. And I don't think that's the finding. If you take a look, there's an Eighth Circuit case, Pyle, U.S. v. Pyle that was decided this year, and in that case an individual who actually I think the facts of the case were they were trying to buy drugs from him and he didn't sell them any drugs. But a trooper came up and was talking to him and he said, there was a camper there and he said, is anybody in there? And he said, my friend. And he goes over and he tells his friend to get out. There was no showing that the friend was dangerous or anything like that. In this case, there wasn't even a drug transaction that had occurred. So I don't think there's a requirement that the officers somehow make an independent assessment that this individual is dangerous, although the magistrate said based on the cash case, there are weapons and violence associated with drug transactions. I don't think that there's a metric to decide whether if you're a big drug dealer or a small drug dealer, you might or might not engage in violence. So I think that there is evidence based on what they knew at the time that this could be a dangerous individual. But I don't think there's a requirement that that be the case. With respect to the amount of time, the evidence was one of the officers testified that it took about five minutes to effect the arrest of Mr. Waters before he was taken out. And he couldn't remember whether the protective sweep started before or after that five minutes, but we're talking a relatively short period of time there. In answer to a question from the court, the officer said, we arrested him and we continued the protective sweep, and that was the deputy who made the check on the couch. So I don't believe there's any evidence that this was an extended period of time that they were doing it. The argument in the brief was that they didn't have to do a protective sweep because Mr. Waters had been taken from the residence. There are any one of a number of cases who have noted, well, once he's secured and handcuffed and arrested, he no longer poses a danger. And he has been secured. He no longer poses a danger. The question is whether somebody else could pose a danger to the officers who were present on the scene. And there's no requirement that I know that they all rush out of the scene in order to preserve the situation. I believe, oh, do you want to talk about the sentencing? Well, I would just note that at the time the sentencing was held under the Bell case. At that point, the holding was that robbery was not a crime of violence under the guidelines. In 2017, Beckles came down and determined that the robbery, that the guidelines were not unconstitutionally vague under the Johnson case. Therefore, those would have been the 70 to 87-month guidelines would have been the appropriate guideline range. And that was a sentence within the guideline range. Independently of that, he has three robbery convictions. But for Johnson, he would be looking at not less than 15 years. So I think the court sentenced him based on his conduct rather than the definition of whether something is a crime of violence or not. If there are no further questions regarding the search. Thank you. I'll be very brief. I think you can always say, well, it's possible someone could be in the couch. But it's just not a realistic possibility. As counsel pointed out, maybe the fabric has been removed. You pull the couch out. You have to get in it. You have to then scoot yourself back so it's a flush against the wall again. And you do all of this without disturbing end tables on either side of the couch that have lamps on top of them. I just don't see the reasonableness of that. If we're going to say anyone could hide in any couch that is large enough, then we have a per se rule that now you get to look behind every single couch any time you do a buoy protective sweep. And that's not in keeping with buoy's requirements at all. I'm not saying that you need to know the identity of the person that could be in the home and some specific factual information about that person. I'm not saying that. There needs to be someone in there, but they have to pose a realistic danger. That's why cases look, well, were there guns in the home? Do we have information that shows a realistic threat? Thank you. Thank you both for your arguments. The case is submitted. Court is adjourned.